JAMES E. CRISFIELD, PLAINTIFF, *v.* FRANCIS M. PERINE, DEFENDANT.

*Post-mortem examination—right of coroner to exclude persons therefrom — supposed murderer no right to be present—chapter 379 of 1864—post-mortem examination under.*

When a coroner directs a *post-mortem* examination to be made, he may, in his discretion, determine whether any, and what persons, may be present beside the surgeons.

*Semble,* that one accused, or suspected of the murder of the person to be examined, has no right to be present.

*Quære,* whether chapter 379 of 1864 contemplates a *post-mortem* examination as a part of the inquest.

MOTION by plaintiff for a new trial, on exceptions taken at the Livingston Circuit, and ordered to be heard at the General Term in the first instance.

The action was for an assault and battery. The answer was a general denial. It appeared at the trial that the defendant was a coroner of the county of Livingston, and that March 15, 1876, he held a coroner's inquest at the house of Charles Moose, in Sparta, in that county, on the dead body of said Charles, who died after receiving personal injuries in an affray which he had with his nephew, Peter J. Moose, a few days previously. A *post-mortem* examination was about to be made by two surgeons employed by the coroner for that purpose. The plaintiff, who, also, was a physician and a surgeon, was in the room where the examination was about to be entered upon, and said that he wished to remain and witness it, but the coroner asked him to leave, and on his refusing, caused him to be put out of the room. For that act this suit was brought. Mr. JUSTICE RUMSEY, who presided at the trial, nonsuited the plaintiff.

*Charles J. Bissell*, for the plaintiff.

*John A. Vanderlip*, for the defendant.

SMITH, J.:

A coroner's inquest is a judicial proceeding, and is within the policy of the statute which declares that the sittings of any court within this State shall be public, and every citizen may freely attend the same. (2 R. S., 274, § 1). But every court has power to prevent disorder in its presence, and may therefore exclude particular individuals if good order requires it. It seems that if a judge of a court of superior jurisdiction causes an individual to be ejected from the room in which the court is held, it will be presumed that he had good cause for so doing, and no action will lie against him; it being a settled rule, of great antiquity, that an action will not lie against a judge of a court of superior or general jurisdiction for any matter done by him in the exercise of his judicial functions. (*Floyd* v. *Barker*, 12 Coke, 23; *Bradley* v. *Fisher*, 13 Wall., 351; *Lange* v. *Benedict*, 18 Alb. L. Jour., 11.) In England, a coroner's court is a court of record, and it has accordingly been held that trespass cannot be maintained against a coroner for turning a person out of a room where he is about to take an inquisition. (*Garnett* v. *Ferrand*, 6 Barn. & Cress., 611.) But in this State a coroner's court is not a court of record. It is a court of inferior jurisdiction. A magistrate of a court of inferior jurisdiction, not of record, when sued for an act done by him in his official capacity, in order to justify, must show that he had authority to do the act complained of. Nothing will be implied in his favor. In the case at bar, no special cause was shown for excluding the plaintiff from the room in which the *post-mortem* examination was about to be conducted. On the contrary, the evidence tended to show that the presence of the plaintiff did not in any manner tend to interfere with the due performance of the examination, and that he wished to remain simply for the purpose of witnessing the operation. And the plaintiff offered to prove that he was employed to be present on behalf of the person at whose hands the deceased received the injuries which were supposed to have caused his death, but there was no offer to show that the fact of such employment was made known to the defendant.

The real question in the case, therefore, is whether a *post-mortem* examination, conducted by surgeons employed by a coroner holding an inquest, is a part of the inquest, in such a sense as that every citizen has a right freely to attend it. We are of the opinion that it is not. The statute which authorized the coroner to cause the examination to be made provides that " a coroner shall have power, when necessary, to employ not more than two competent surgeons to make *post-mortem* examinations and dissections, and to testify to same," etc. (Laws of 1873, ch. 833, § 2; 1874, ch. 535, § 2.) The intention of the statute plainly is, that the examining surgeons are to testify before the jury, upon the taking of the inquisition, as to the matters disclosed by the examination. But what necessity for their testimony, if the examination is to be had in the presence of the jury ? At common law, it was essential to the validity of a coroner's inquisition that the jury should view the body. (*Rex* v. *Ferrand,* 3 B. & Ald., 260.) To the same effect is our statute. (2 R. S., 742, 743, §§ 2, 5.) But it was never required that the body should be dissected in any case. And, under the statute of 1873, it is discretionary with the coroner to cause a dissection to be made, and to select the surgeons. We think he has a discretion, also, to determine whether any persons, and what persons, may be present besides the surgeons. Not even the jurors have a right to witness the examination. They are to be informed of what it discloses by the testimony of the surgeons: Considerations of delicacy or respect for the feelings of relatives may often require that the public shall not be admitted to the *post-mortem* examination.

Chapter 379 of the Laws of 1864, which provides that a justice of the peace may hold an inquest, in case the attendance of a coroner cannot be procured within twelve hours after the discovery of a dead body, provides, also, that, " in all cases in which the cause of death is not apparent, it shall be the duty of the justice to associate with himself a regularly licensed physician, to make a suitable examination for the discovery of said cause." It may be supposed that this provision contemplates an examination as a part of the inquest. Whatever its true construction may be (a point upon which we express no opinion), the act of 1864 has no application to an inquest held by a coroner.

The plaintiff's counsel has argued that, as a dissection destroys the evidences of the cause of death so that they cannot be subsequently discovered, the accused or suspected person has a right to be present for his own protection. Frequently, no one is suspected till proof is elicited at the inquest. Many times it is expedient that the suspected person should not be informed of the evidence against him, while he is at large; and, whatever rights the suspected person may have, in respect to being present at the examination, they do not avail the plaintiff in this case, since he did not inform the coroner that he was employed by Peter J. Moose, and he did not put his request to be permitted to witness the examination on that ground. But we think no person has a right to be present at the *post-mortem* examination, upon the ground that he is suspected of having caused the death. He loses no legal right by being excluded. He has no right to dissect the body. If the coroner's jury pronounces him guilty, the inquest, like the indictment of a grand jury, or a sworn complaint before a magistrate, simply makes him liable to arrest; it is not even *prima facie* evidence against him on the trial. It is true, the examining surgeons may testify at the trial of the matters developed by the *post-mortem* examination, but the cases are innumerable in which the results of observations and examinations by professional witnesses and other experts are received in evidence, although obtained by the procurement of the party offering them, in the absence of the opposite party, and when the latter had neither the opportunity nor the right to be present. A familiar instance is that of the testimony of a chemist as to the result of an analysis made by him, at the employment of the prosecuting attorney, of the contents of the stomach of a deceased person alleged to have been killed by poisoning. In all such cases, the party against whom the testimony is offered must rely upon his right to cross-examine the witness, and to meet any erroneous opinions or theories they may advance by the testimony of other experts.

We think the defendant is entitled to judgment on the nonsuit.

TALCOTT, P. J., concurred; HARDIN, J., dissented.

New trial denied and judgment ordered for defendant on nonsuit.